UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Osvaldo Boves,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Aaron's, Inc.<br>and David Epright,<br><br>　　　　Defendants. | Case No.: 18-cv-0005-HBP |

## DEFENDANTS' MOTION TO DISMISS AND TO COMPEL ARBITRATION, AND BRIEF IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 12(b) and the Federal Arbitration Act, 9 U.S.C. §§ 1-16, Defendants Aaron's, Inc. ("Aaron's) and David Epright ("Epright") (collectively "Defendants"), move this Court to enter an Order dismissing this action and directing Plaintiff Osvaldo Boves ("Plaintiff") to arbitrate his claims, or in the alternative, staying all proceedings in this matter. In support of their Motion, Defendants show the Court as follows:

### FACTUAL BACKGROUND

Aaron's is engaged in the business of manufacturing, selling and leasing furniture, as well as selling and leasing appliances and electronics. *See* Declaration of David Epright ("Epright Decl." attached hereto as Exhibit 1), ¶3. The Company operates a network of retail stores, including stores in the Northeast United States.

*Id.* Aaron's refers to its employees as associates. *Id.* Plaintiff was hired by Aaron's on or about May 10, 2010 and, since August 24, 2017, has been employed as the General Manager at Aaron's Store No. C1575 in Bronx, New York. *Id.* at ¶4. Epright is employed by Aaron's as a Regional Director and was Plaintiff's direct or indirect supervisor. *Id.* at ¶¶1, 4.

On March 1, 2017, Plaintiff entered into a stand-alone Associate Arbitration Agreement (the "Arbitration Agreement") with Aaron's. *Id.* at ¶5. (A copy of the Arbitration Agreement Eff. 03-01-2017 is attached as Exhibit A to Epright Decl.). The relevant portions of the Agreement read as follows:

> **Section 1: Duty to Arbitrate**
> By signing this Agreement, you and the Company each agree that all Claims between you and the Company will be exclusively decided by arbitration governed by the Federal Arbitration Act before one neutral arbitrator and not by a Court or Jury. In all arbitration cases, unless otherwise agreed by the parties in writing, the neutral arbitrator shall have experience in the area of employment law and shall be selected through the American Arbitration Association ("AAA"). The arbitration shall be conducted under the most current version of the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures ("AAA Rules"), except as modified in this Agreement. You may obtain the most current version of the AAA Rules and other information about AAA from www.adr.org.
>
> **Section 2: Arbitration on an Individualized Basis**
> The arbitration shall proceed on an individualized basis and no dispute may be consolidated or joined with a dispute between any other Associate (i.e., employee of the Company) and the Company, nor may you seek to bring your dispute on behalf of other Associates as a class or collective action. Any arbitration ruling by an arbitrator consolidating the disputes of two or more Associates or allowing class

or collective action arbitration would be contrary to the intent of this Agreement and would be subject to immediate judicial review.

**Section 3: Pending Litigation**

As used in this Agreement, "Claims" means all disputes between you and the Company, including but not limited to disputes arising out of or related to your application for employment, your employment by the Company, or your separation from employment with the Company (including any job-related post-separation disputes) and includes any such disputes with current or former owners, members, officers, managers, supervisors, associates, or agents of the Company whether acting in their official or individual capacity. The term "Claims" includes, but is not limited to, any claim arising under federal, state or local law, under a statute such as Title VII of the Civil Rights Act of 1964 (Title VII), the Equal Pay Act pf 1963 (EPA), the Fair Labor Standards Act (FLSA), the Family and Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), 42 U.S.C. § 1981, Title II of the Genetic Information Nondiscrimination Act of 2008 (GINA) and the Uniformed Services Employment and Reemployment Rights Act (USERRA), to name a few, under a rule, regulation or the common law, including, but not limited to any wage and hour claim of discrimination, harassment, retaliation, defamation, or wrongful discharge. The term "Claims" includes claims in equity; however, any party may seek interim equitable relief from a court of competent jurisdiction in order to maintain the status quo of any particular matter. This Agreement covers any Claims subject to arbitration which are brought on or after March 1, 2017, even if the alleged act or omission occurred prior to March 1, 2017. As used in this Agreement, "Claims" does not mean or include disputes related to workers' compensation claims, or health benefits, or proceedings under the Occupational Safety & Health Administration (OSHA) or the National Labor Relations Act (NLRA).

**This Agreement contains the entire agreement between you and the Company regarding arbitration, and it supersedes any and all prior representations or statements by any manager, Associate, or agent of the Company.** The terms of this Agreement control over any prior arbitration agreements you may have signed with the Company and any prior discussions you may have had with a Company representative about arbitration. You will not be disciplined,

> discharged, or otherwise retaliated against as a result of pursuing claims pursuant to this Agreement or exercising any rights under any federal, state or local laws.
>
> **Having carefully read the foregoing sections, I knowingly and voluntarily sign this Agreement.**

*See* Epright Decl., Exhibit A.  The Arbitration Agreement also provides a Right to Opt-Out section which clearly spells out the steps an associate may take should he or she not want to agree to the Arbitration Agreement, specifically completing the Aaron's Arbitration Agreement Opt-Out Election Form ("Opt-Out Form").  *See* Epright Decl., Exhibit A, p. 5.  Further, associates had a third option of not affirmatively executing the Arbitration Agreement or the Opt-Out Form by March 31, 2017, which would subject them to the Arbitration Agreement after the opt-out period expired.  *Id.*

On March 1, 2017, Plaintiff voluntarily executed the electronic signature page for the Associate Arbitration Agreement, which states:

> By providing my signature below I acknowledge that I have read Arbitration Agreement Eff. 03-01-2017 (DOC0001011) and understand it in its entirety.

(A copy of the Electronic Signature Page is attached as Exhibit B to Epright Decl.). Plaintiff executed the electronic signature page on the first day it was disseminated to employees, though he had until March 31, 2017 to do so.  Epright Decl. ¶5. Therefore, Plaintiff cannot now claim ignorance to the binding nature of this language which precludes his filing and/or participation in the present action.

## ARGUMENT

**I. The Federal Arbitration Act Favors Enforcement of Arbitration Agreements.**

The Federal Arbitration Act ("FAA") strongly encourages the enforcement of arbitration provisions. *See* 9 U.S.C. § 1 et seq. *See also AT&T v. Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011) (noting that the FAA was "designed to promote arbitration" and "embod[ies] a national policy favoring arbitration."). Accordingly, courts are directed to read arbitration agreements liberally in favor of arbitration. *Hopkins v. World Acceptance Corp.*, 798 F. Supp. 2d 1339, 1344 (N.D. Ga. 2011) ("'Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.' In light of this policy, the Supreme Court mandates the liberal application of arbitration clauses")(quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 248 (S.D.N.Y. 2005) (As a result, arbitration clauses must be read as broadly as possible, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.")(citation omitted). Likewise, ambiguities in the arbitration agreement or doubts as to the parties' intentions should be resolved in favor of arbitration. *Id.* at 24-25.

Pursuant to the FAA, 9 U.S.C. § 1, et seq., this Court's analysis must begin and end with the Arbitration Agreement and its express provisions compelling

arbitration of all claims that arise between Plaintiff and Aaron's. *See* 9 U.S.C. § 2 ("A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *see also American Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304, 2306 (2013) ("The text [of the Federal Arbitration Act] reflects the overarching principle that arbitration is a matter of contract); *see also Rent-A-Center, West, Inc. v. Jackson*, 130 S.Ct. 2772, 2776 (2010). The FAA unequivocally compels courts to "rigorously enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes, and the rules under which arbitration will be conducted." *See Italian Colors*, 133 S.Ct. at 2306 (internal quotations and citations omitted).

Although the FAA codifies the federal policy favoring enforcement of arbitration agreements, questions regarding the existence of a contract are determined by state contract law. While there is no choice of law provision in the Arbitration Agreement, Plaintiff is employed in New York and New York law should be used for guidance. *See* Epright Decl., Exhibit A. Accordingly, New York law should inform the Court's analysis of the existence of a contract to arbitrate disputes.

Viewing the Arbitration Agreement under New York law, the United States Court of Appeals for the Second Circuit provides case law that is directly controlling on this case. The Second Circuit and courts within its jurisdiction direct district courts determining arbitrability under the FAA to consider: (1) whether the parties have entered into a valid agreement to arbitrate; and if so (2) whether the dispute at issue comes within the scope of the agreement. *Shetiwy v. Midland Credit Mgmt.*, (No. 12-cv-7068), 2013 WL3530524, at *2 (S.D.N.Y. Jul.12, 2013) (quoting *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127-28 (2d Cir. 2011)). The party resisting arbitration bears the burden of proving that the arbitration agreement is invalid or does not encompass the claims at issue. *See Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

## II. This Court Must Enforce the Agreement As Written and Dismiss this Action and Compel Arbitration.

As explained below, this Court must dismiss this action and compel arbitration as: (1) the Arbitration Agreement reflects a valid, binding agreement to arbitrate; and (2) Plaintiff's claims fall within the scope of the Arbitration Agreement.

### A. The Parties Entered Into A Valid Agreement To Arbitrate The Claims At Issue.

As explained above, the Arbitration Agreement is a valid, binding contract in which Aaron's and Plaintiff expressly agreed to submit all claims and disputes –

including the claims that Plaintiff brought in this action – to AAA arbitration. Plaintiff had ample notice of the terms in the Arbitration Agreement and had sufficient opportunity to elect not to execute the Arbitration Agreement. Plaintiff understood what he was signing and continued with full knowledge of the arbitration terms. *See Chanchani v. Salomon/Smith Barney, Inc.*, (No. 99-cv-9219), 2001 WL 201214, at *8-9 (S.D.N.Y. Mar. 1, 2001); *Tarulli v. Circuit City Stores, Inc.*, 333 F. Supp. 2d 151, 158 (S.D.N.Y. 2004) (compelling arbitration where the plaintiff "voluntarily signed the [arbitration] Agreement and knowingly accepted employment with the defendant on the express condition that employment-related disputes would be settled through arbitration"). Accordingly, this Court must find that the first prong of the Second Circuit's test is satisfied in favor of dismissing this action and compelling arbitration.

**B. Plaintiff's Claims Fall within the Scope of the Arbitration Agreement.**

Plaintiff's claims in the Complaint arise directly out of Plaintiff's employment with Aaron's. Specifically, Plaintiff's claims for sexual orientation discrimination in violation of the New York City Human Rights Law (count one), retaliation in violation of the New York City Human Rights Law (count two), and violation of general business law § 349 (count three), all stem from Plaintiff's ongoing employment with Aaron's. *See* Complaint, generally. Section 4: Covered Claims of the Arbitration Agreement defines "Claims" as "all disputes between [Plaintiff]

and the Company, including by not limited to disputes arising out of or related to … [Plaintiff's] employment by the Company … and includes any such disputes with current or former owners, members, officers, managers, supervisors, associates, or agents of the Company whether acting in their official or individual capacity." *See* Epright Decl., Exhibit A, pp. 1-2. The Arbitration Agreement also clarifies that "[t]he term "Claims" includes, but is not limited to, any claim arising under federal, state or local law, …." Plaintiff's claims arising out of his employment with Aaron's fall squarely within the scope of the Arbitration Agreement. This Court must find that the second prong of the Second Circuit's test is also satisfied in favor of dismissing this action and compelling arbitration.

## III. Public Policy Dictates the Enforcement of the Arbitration Agreement.

Even if the FAA did not mandate that this matter be compelled to arbitration (which it does), Plaintiff's claims are still subject to mandatory arbitration under New York arbitration law, the state law in which his claims are brought. The detailed provisions in the Arbitration Agreement clearly demonstrate that the parties' intent was to arbitrate any employment-related disputes that arose between them. Plaintiff voluntarily executed the Arbitration Agreement, and did not chose the option of opting out. Therefore, his execution of the enforceable contract language, in and of itself, provides a basis for the enforcement of the arbitration provision, and the compelling of this lawsuit to arbitration.

In particular, New York arbitration law favors arbitration and establishes that courts should interfere "as little as possible with the freedom of consenting parties" to submit disputes to arbitration. *Bd. of Educ. Of Bloomfield Cent. Sch. Dist. v. Christa Constr., Inc.*, 80 N.Y. 2d 1031, 1032 (1992). Thus, even assuming for the sake of argument that the FAA did not apply to this matter (which Aaron's contends it does), Plaintiff would still be compelled to arbitrate this matter pursuant to New York law. As such, Plaintiff's claims should be compelled to arbitration on that additional basis.

## IV. This Action should be Dismissed Pending Arbitration.

Once claims asserted in a pending court action are determined to be subject to an arbitration agreement, the FAA mandates that the action be stayed pending completion of arbitral proceedings. 9 U.S.C. § 3. *See also Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Genesco, Inc. v. T Kakiuchi & Co.*, 815 F.2d 840, 856 (2nd Cir. 1987) ("Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit . . ."); *S.A. Mineracao Da Trindade-Samitri v. Utah Int't Inc.*, 745 F.2d 190, 196-97 (2nd Cir. 1984). Stays are appropriate when only some claims are subject to arbitration.

However, where all of the issues raised in a plaintiff's complaint must be submitted to arbitration, as here, courts dismiss the cases entirely. *See, e.g., Williams v. Parkell Prods.*, 91 Fed. Appx. 707, 709 (2nd Cir. 2003) (affirming dismissal of

complaint where employee had entered into an agreement to arbitrate disputes); *Vittengl v. Wurld Media, Inc.*, (No. 1:06-cv-1513), 2007 WL 1063655, at *2-3 (N.D.N.Y. Apr. 5, 2007) (finding that "because there are no issues remaining in this dispute that might properly be decided by the district court, it is appropriate to dismiss the action rather than to stay it"); *Spencer-Franklin v. Citigroup/Citibank NA.*, (No. 1:06-cv-3475), 2007 WL 521295, at *4 (S.D.N.Y. Feb. 21, 2007) (recognizing that "[a]ll courts of which we are aware have followed the rule" that a court may dismiss a case in which all claims must be arbitrated); *Rubin v. Sana Int'l Corp.*, 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) ("Where all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings.").

Based on the foregoing, once this Court compels arbitration of Plaintiff's claims, this action should be dismissed as all claims of Plaintiff are subject to arbitration. However, in the event that the Court chooses not to dismiss this action, the FAA requires that the Court stay these proceedings and compel Plaintiff to submit his claims to arbitration. 9 U.S.C. §3 (2006).

## CONCLUSION

Plaintiff's claims must properly be arbitrated. For the foregoing reasons, Defendants respectfully request that the Court dismiss this action and compel

Plaintiff to arbitrate his claims, or in the alternative, stay this action pending the outcome of the arbitration of the claims.

Dated: February 26, 2018
New York, New York

/s/ *Ilene W. Berman*
Ilene W. Berman
Joseph M. English*
Shawntel R. Hebert*
TAYLOR ENGLISH DUMA LLP
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
(770) 434-6868 (telephone)
(770) 434-7376 (facsimile)
E-mail: iberman@taylorenglish.com
jenglish@taylorenglish.com
shebert@taylorenglish.com

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Osvaldo Boves,<br><br>       Plaintiff,<br><br>vs.<br><br>Aaron's, Inc.,<br>and David Epright,<br><br>       Defendants. | Case No.: 18-cv-0005-HBP |

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2018, I electronically served the foregoing *DEFENDANTS' MOTION TO DISMISS AND TO COMPEL ARBITRATION, AND BRIEF IN SUPPORT* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

/s/ *Ilene W. Berman*
Ilene W. Berman
*Counsel for Defendants*

01124484-1