# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Osvaldo Boves, | |
| Plaintiff, | |
| vs. | Case No.: 1:18-cv-0005-GHW |
| Aaron's, Inc. and David Epright, | |
| Defendants. | |

## DECLARATION OF DAVID EPRIGHT

1.

My name is David Epright and I am a defendant in the above-styled action. I am also a Regional Director in Aaron's, Inc.'s ("Aaron's") Northern Operations Division, which is primarily located in the Northeast United States. Aaron's is also a defendant in the above-styled action.

2.

Unless otherwise stated, the facts stated herein are within my personal knowledge. I am over the age of twenty-one and competent to testify to the matters set forth in this Declaration. I understand that this Declaration is given for

use in the above-styled action, and that it may be used for any purpose permitted by law.

3.

Aaron's is engaged in the business of manufacturing, selling and leasing furniture, as well as selling and leasing appliances and electronics. Aaron's operates a network of retail stores, including stores in the Northeast United States. Aaron's refers to its employees as associates.

4.

I began my employment with Aaron's on August 23, 2006, left in July 2013, and returned in July 2015. During my employment with Aaron's, I have held the positions of Regional Customer Accounts Manager, Regional Manager, Sr. Regional Manager, Divisional Customer Accounts Manager, and Regional Director. On or about May 10, 2010, I hired Plaintiff Osvaldo "Ozzie" Boves ("Plaintiff") as an associate with Aaron's. I promoted Plaintiff to General Manager, and he was in that position when I left in 2013 and was still in that position when I returned in 2015. I supervised Plaintiff directly or indirectly at all times relevant to the Complaint. On or about August 24, 2017, Plaintiff moved into the position of General Manager at Store No. C1575 in Bronx, New York.

5.

On March 1, 2017, Aaron's distributed a stand-alone Associate Arbitration Agreement (the "Arbitration Agreement") to all of its associates (or employees) nationwide. A true and correct copy is attached as Exhibit A. The Arbitration Agreement was distributed electronically and associates were given until March 31, 2017 to either execute the Arbitration Agreement or complete and return the Aaron's, Inc. Arbitration Agreement Opt-Out Election Form ("Opt-Out Form").

6.

On March 1, 2017, Plaintiff signed the electronic signature page agreeing to be bound by the Arbitration Agreement. A true and correct copy of the signature page is attached as Exhibit B.

7.

This is a voluntary statement by me. No threats or promises of any kind have been made to me, nor have I received any benefit in exchange for making this statement.

8.

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1764, that the foregoing is true and correct.

3

Executed at _Plainfield_ , New Jersey
this _23_ day of February, 2018

_____

David Epright
Regional Director, Aaron's, Inc.

4

# EXHIBIT A

## AGREEMENT TO ARBITRATE

This Agreement to Arbitrate ("Agreement") requires you to arbitrate any legal disputes with the Company. As used in this Agreement, the term "Company" means Aaron's, Inc. and its predecessors and successors in interest, assignees, parents, subsidiaries, divisions, related companies, entities, and their past, present and future shareholders, owners, officers, directors, supervisors, managers, associates, or agents whether acting in their official or individual capacity.

**Section 1:**       **Duty to Arbitrate**

By signing this Agreement, you and the Company each agree that all Claims between you and the Company will be exclusively decided by arbitration governed by the Federal Arbitration Act before one neutral arbitrator and not by a Court or Jury. In all arbitration cases, unless otherwise agreed by the parties in writing, the neutral arbitrator shall have experience in the area of employment law and shall be selected through the American Arbitration Association ("AAA"). The arbitration shall be conducted under the most current version of the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures ("AAA Rules"), except as modified in this Agreement. You may obtain the most current version of the AAA Rules and other information about AAA from www.adr.org.

**Section 2:**       **Arbitration on an Individualized Basis**

The arbitration shall proceed on an individualized basis and no dispute may be consolidated or joined with a dispute between any other Associate (i.e., employee of the Company) and the Company, nor may you seek to bring your dispute on behalf of other Associates as a class or collective action. Any arbitration ruling by an arbitrator consolidating the disputes of two or more Associates or allowing class or collective action arbitration would be contrary to the intent of this Agreement and would be subject to immediate judicial review.

**Section 3:**       **Pending Litigation**

This Agreement does not apply to any class or collective action lawsuits filed against the Company in any state or federal court before March 1, 2017.

**Section 4:**       **Covered Claims**

As used in this Agreement, "Claims" means all disputes between you and the Company, including but not limited to disputes arising out of or related to your application for employment, your employment by the Company, or your separation from employment with the Company (including any job-related post-separation disputes) and includes any such disputes with current or former owners, members, officers, managers, supervisors, associates, or agents of the Company whether acting in their official or individual capacity. The term "Claims" includes, but is not limited to, any claim arising under federal, state or local law, under a statute such as Title VII of the Civil Rights Act of 1964 (Title VII), the Equal Pay Act pf 1963 (EPA), the Fair Labor Standards Act (FLSA), the Family and Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), 42 U.S.C. § 1981, Title II of the Genetic Information Nondiscrimination Act of 2008 (GINA) and the Uniformed Services Employment and Reemployment Rights Act (USERRA), to name a few, under a rule, regulation or the common law, including, but not limited to any wage and hour claim of discrimination, harassment, retaliation, defamation, or wrongful discharge. The term "Claims" includes claims in equity; however, any party may seek interim equitable relief

1

from a court of competent jurisdiction in order to maintain the status quo of any particular matter.   This Agreement covers any Claims subject to arbitration which are brought on or after March 1, 2017, even if the alleged act or omission occurred prior to March 1, 2017.   As used in this Agreement, "Claims" does not mean or include disputes related to workers' compensation claims, or health benefits, or proceedings under the Occupational Safety & Health Administration (OSHA) or the National Labor Relations Act (NLRA).

**This Agreement contains the entire agreement between you and the Company regarding arbitration, and it supersedes any and all prior representations or statements by any manager, Associate, or agent of the Company.**   The terms of this Agreement control over any prior arbitration agreements you may have signed with the Company and any prior discussions you may have had with a Company representative about arbitration.   You will not be disciplined, discharged, or otherwise retaliated against as a result of pursuing claims pursuant to this Agreement or exercising any rights under any federal, state or local laws.

**Section 5:**       **Arbitrator's Authority**

A court of competent jurisdiction, and not the Arbitrator, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable.   No Arbitrator shall have the power to alter the at-will status of any Associate or to impose any limit on the Company's discretion to discipline or discharge any Associate, except as otherwise provided by law.

This Agreement shall not be construed to deprive a party of a substantive right preserved by law.   The Arbitrator is bound by the applicable law of the jurisdiction under which the dispute arises.   An issue is subject to arbitration only if it states a claim under applicable federal, state or local law. The Arbitrator shall dismiss, without a hearing on the merits, any matter that does not state a claim under applicable federal, state or local law.

**Section 6:**       **Starting Arbitration**

Either party to this Agreement may initiate arbitration by delivering a written request to arbitrate to the American Arbitration Association, listing the Claim(s) to be arbitrated. A copy of the written request must also be served on the other party by hand delivery or by certified mail.   Requests to the Company shall be sent to Aaron's, Inc., Attn:  General Counsel, 400 Galleria Parkway SE, Suite 300, Atlanta, Georgia 30339.   Requests to you shall be delivered to your legal counsel, if known, or to your last known home address on file with the Company.

**Section 7:**       **Time Limits for Initiating a Claim**

For those causes of action where a charge or complaint filed with a government agency is a necessary prerequisite to filing a lawsuit, such filing prerequisite is hereby waived and a claim shall be processed in arbitration so long as that claim is filed with the American Arbitration Association and served on the other party as set forth in Section 3 within the time limits established by law for the filing of such charge or complaint with a government agency in the appropriate geographic jurisdiction.   Except as modified in this Section, the time limits for initiating a Claim shall be the time limits provided by law for any legal claim, dispute or cause of action.

**Section 8:**        **Discovery**

The Arbitrator and the parties will follow the Federal Rules of Evidence ("FRE") and the Federal Rules of Civil Procedure ("FRCP") on issues, except as specifically modified in this Agreement. Provisions permitting limited discovery have been added to ensure that both parties have similar access to relevant information.

   a.        Interrogatory: Each party shall be entitled to propound and serve upon the other party one set of Interrogatories in a form consistent with Rule 33 of the FRCP, and which shall be limited in number to twenty-five (25) interrogatories (including subparts, which shall be counted separately). Parties reserve the right to make objections to any interrogatories on the grounds that the information sought is irrelevant and not likely to lead to relevant information or that the interrogatory is overly broad, vague, or burdensome, or any other good faith objection under the FRCP.

   b.        Request for Production of Documents: Each party shall also be entitled to propound and serve upon the other party one set of Requests for Production of Documents in a form consistent with Rule 34 of the FRCP, and which shall be limited in number to twenty-five (25) requests (including subparts, which shall be counted separately). Parties reserve the right to make objections to any document request on the grounds that the documents sought are irrelevant and not likely to lead to relevant information, overly broad, vague or burdensome, or any other good faith objection under the FRCP.

   c.        Depositions: Each party shall be entitled to conduct a maximum of two (2) eight-hour days of depositions of witnesses or of the parties in accordance with the procedures set forth in Rule 30 of the FRCP. Depositions of a corporation through a corporate designee shall be limited to no more than three (3) designated topics. In addition, each party shall be entitled to conduct one (1) eight-hour day of depositions of expert witnesses designated by the other party.

The Arbitrator shall have the authority to resolve all issues concerning discovery that may arise between the parties. Upon request of any party and a showing of good cause, the Arbitrator may permit additional relevant discovery, if the Arbitrator finds that such additional relevant discovery is not overly burdensome, and will not unduly delay the conclusion of the arbitration.

**Section 9:**        **Dispositive Motions**

Either party shall have the right to file a dispositive motion with the Arbitrator, including a motion to dismiss and a motion for summary judgment. These motions shall be heard and ruled upon by the Arbitrator at least forty-five days prior to holding any hearing on the claims or requiring any submissions related to a hearing on the merits.

**Section 10:**        **Confidentiality of Arbitration**

The Arbitration shall be private and confidential, unless applicable law provides to the contrary. The Arbitrator shall maintain the privacy and confidentiality of the arbitration hearing unless applicable law provides to the contrary. The Arbitrator shall have the authority to make appropriate rulings to safeguard that confidentiality.

The Arbitrator shall maintain the privacy of the arbitration hearings. No one may attend the hearings without the agreement of all parties, except (i) the parties themselves (in the case of a natural person, this includes the spouse of the natural person; if the party is a corporation, it includes up to two (2) corporate representatives); (ii) counsel (including in-house counsel in addition to the two (2) corporate representatives) for all parties; and (iii) any person whose presence is shown by a party to be essential to the presentation of the party's cause.

**Section 11:     Appeals**

Either party may bring an action in any court of competent jurisdiction to enforce an arbitration award as provided in the Federal Arbitration Act. A party opposing enforcement of an award may bring a separate action in any court of competent jurisdiction to set aside the award, where the standard of review will be the same as that applied by an appellate court reviewing a decision of a trial court sitting without a jury. If you or your representative files an arbitration award or complaint in any court, you agree to file that document under seal to protect the confidentiality and privacy of all parties.

**Section 12:     Term, Modification and Revocation**

This Agreement to arbitrate shall survive the termination of the employer-employee relationship between the Company and you, and shall apply to any Claim whether it arises or is asserted during or after termination of your employment with the Company. This Agreement can be amended, modified, or revoked in writing by the Company at any time, but only upon thirty (30) days' advance notice to you of that amendment, modification or revocation. However, any amendment, modification or revocation will have no effect on any Claim (1) that was filed for arbitration prior to the effective date of such amendment, modification or revocation, or (2) is based on alleged discriminatory or retaliatory conduct that occurred prior to the effective date of such amendment, modification or revocation.

**Section 13:     Severability**

If any portion or provision of this Agreement is held to be void or unenforceable, the remainder of this Agreement will be enforceable and any part may be severed from the remainder, as appropriate.

**Section 14:     Federal Arbitration Act**

The parties recognize that the Company operates in many states in interstate commerce. The parties acknowledge and agree that the Federal Arbitration Act, 9 U.S.C. § 1, et seq., shall govern this Agreement and the arbitration.

**Section 15:     National Labor Relations Act**

Notwithstanding the group, class or collective action waiver set forth in Section 1, you are not waiving your right under Section 7 of the National Labor Relations Act ("NLRA") to file a group, class or collective action in court and you will not be disciplined or threatened with discipline for doing so. However, the Company may lawfully seek enforcement of the group, class or collective action waiver in this Agreement under the Federal Arbitration Act and seek dismissal of any such class or collective claims. Both parties further agree that nothing in this Agreement precludes either party from participating in proceedings to adjudicate unfair labor practices charges before the National Labor Relations Board ("NLRB"), including, but not limited to, charges addressing the enforcement of the group, class or collective action waiver set forth in the

preceding paragraph.

**Section 16:        Alternative Jury Waiver**

Should a court of competent jurisdiction void the application of this Agreement as to one or more covered Claims, or should both parties waive the application of the Agreement to one or more covered Claims, the parties agree to mutually waive their respective rights to a trial by jury in a court of competent jurisdiction in which an action is filed to resolve any such covered Claims. **The parties understand and agree that by using arbitration to resolve Claims, they are giving up any right that they may have to a judge or jury trial.**

**Section 17:        Right to Opt-Out**

**If you do not wish to be bound by the terms of this Agreement, you must opt out by notifying the Company in writing, using the Company's designated opt-out form. In order to opt out of the benefits of this Agreement, you must fully complete and submit the opt-out form within thirty (30) days of the date on which the Company published this Agreement to you electronically (the "Opt-Out Period"). You can access the opt-out form by clicking:** http://my.aarons.com/sites/documentcenter/Documents/Aaron's_Arbitration_Agreement_Opt-Out_Election_Form.pdf **To be effective, the opt-out form must be signed by you, dated, it must contain all of the requested information in legible print, and it must be postmarked and sent via traceable mail (e.g., trackable US Mail, FedEx, UPS, etc.) or delivered via hand delivery within the Opt-Out Period. Retain proof of sending the opt-out form via traceable mail for your records.**

Should you choose to opt out of the Agreement, you acknowledge and agree that the Company is no longer bound by the terms of the Agreement and may elect to bring any covered Claims it has against you in a court rather than in arbitration. In addition, should you choose to opt out of the Agreement, Aaron's, Inc. and you agree to mutually waive the right to a trial by jury in a court of competent jurisdiction in an action filed in which Aaron's, Inc. (or any of its predecessors and successors in interest, assignees, parents, subsidiaries, divisions, related companies, entities, and their past, present and future shareholders, owners, officers, directors, supervisors, managers, associates, or agents whether acting in their official or individual capacity) and you both are a party. Instead, the action would be tried by a judge.

Should you timely opt out as provided in this paragraph, you will not be subject to any adverse employment action as a consequence of that decision and you may pursue available legal remedies without regard to this Agreement.

**Section 18:        Effect of Signing Agreement**

If you do not timely opt out of the Agreement as provided in Section 17, above, you will be bound by its terms, even if you do not sign it.

**Having carefully read the foregoing sections, I knowingly and voluntarily sign this Agreement.**

_____                    *This Agreement to Arbitrate has already*
Signature of Associate                                                              *been agreed to by Aaron's, Inc.*

5

# EXHIBIT B

## Arbitration Agreement Eff.03-01-2017 (DOC0001011)

By providing my signature below I acknowledge that I have read Arbitration Agreement Eff.03-01-2017 (DOC0001011) and understand it in its entirety.

| Name | Signature | Date signed | User ID |
|---|---|---|---|
| Osvaldo Boves | Ozzie Boves | 2017-03-01 14:43:15 | oboves |

## Audit Log

| Timestamp | Action |
|---|---|
| 2017-02-28 17:34:29 | Document published |
| 2017-03-01 14:43:15 | Document signed |
| 2018-01-12 12:29:34 | Signature downloaded |