USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/19/18

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
OSVALDO BOVES,                      :
              Plaintiff,            :   18 Civ. 5 (HBP)
    -against-                       :   OPINION
                                        AND ORDER
AARON'S INC.                        :
and DAVID EPRIGHT,
                                    :
              Defendants.
                                    :
-----------------------------------X
```

PITMAN, United States Magistrate Judge:

I. Introduction

By motion dated February 26, 2018 (Docket Item ("D.I.") 27), defendants Aaron's, Inc. ("Aaron's") and David Epright move to (1) dismiss this action and (2) compel arbitration; alternatively, defendants seek to stay all proceedings in this matter. (Defendants' Motion to Dismiss and to Compel Arbitration and Brief in Support, dated February 26, 2018 (D.I. 27)). All parties have consented to my exercising plenary jurisdiction in this matter pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, defendant's motion to stay proceedings and compel arbitration is granted; defendants' motion is denied in all other respects.

II. Facts

This is a diversity action in which plaintiff alleges that defendants -- his employer and supervisor -- discriminated against him on the basis of his sexual orientation, in violation of New York City and New York State law. The issue raised by the present motion is whether plaintiff must resolve his claim through arbitration.

On March 1, 2017, Aaron's sent an Associate Arbitration Agreement[1] ("AAA") by email to all employees (Declaration of David Epright, dated February 26, 2018 (D.I. 27-1) ("Epright Decl.") ¶ 3). The AAA provides, in pertinent part,

> By signing this Agreement, you and the Company each agree that all Claims between you and the Company will be exclusively decided by arbitration governed by the Federal Arbitration Act before one neutral arbitrator and not by a Court or Jury. In all arbitration cases, unless otherwise agreed by the parties in writing, the neutral arbitrator shall have experience in the area of employment law and shall be selected through the American Arbitration Association ("AAA"). The arbitration shall be conducted under the most current version of the American Arbitration Association's Employment Arbitration Rules and Mediation Procedures ("AAA Rules"), except as modified in this Agreement. You may obtain the most current version of the AAA Rules and other information about AAA from www.adr.org.
>
> \*   \*   \*
>
> Section 4: Covered Claims
>
> This agreement contains the entire agreement between you and the Company regarding arbitration, and it

---

[1] Aaron's refers to its employees as "associates".

2

> supersedes any and all prior representations or state-
> ments by any manager, Associate, or agent of the Com-
> pany. The terms of this Agreement control over any
> prior arbitration agreement you may have signed with
> the Company and any prior discussions you may have had
> with a Company representative about arbitration. You
> will not be disciplined, discharged or otherwise retal-
> iated against as a result of pursuing claims pursuant
> to this Agreement or exercising any rights under any
> federal, state or local laws.
>
> \*        \*        \*
>
> Section 18: Effect of Signing Agreement
>
> \*    \*    \*
>
> Having carefully read the foregoing sections, I know-
> ingly and voluntarily sign this Agreement.

Defendants state that plaintiff electronically signed the agree-ment electronically and is, therefore, bound by its terms; plaintiff claims that he does not remember receiving or signing the AAA.

Specifically, defendants state that on March 1, 2017, the AAA was distributed by e-mail to all of Aaron's employees; the employees were given until March 31, 2017 either to execute the AAA and return it to Aaron's or to complete and return an opt-out form (Epright Decl. ¶ 5). Defendants further state that plaintiff signed the AAA electronically on March 1, 2017 (Epright Decl. ¶ 6 & Exhibit B thereto).

Plaintiff does not expressly deny signing the AAA. Rather, he states that he was surprised when he was advised at a December 2017 human resource meeting that he had signed the AAA

(Declaration of Osvaldo Boves, dated March 26, 2018 (D.I. 37-1) ("Boves Decl.") ¶ 6). Specifically, he states:

> I do not remember any agreement entering into arbitration. I have seen the arbitration agreement attached to this statement and I do not recognize reading it, or seeing it, or ever being notified about anything like this until the December 2017 meeting. I certainly don't remember signing anything and never refused to sign anything that Aarons told me to. If I did sign it, I can only imagine I did so because my employer told me to do so. If I had refused to sign anything, I believed I would be retaliated against, in manners similar to what happened to Mikki.

Plaintiff has also submitted the declaration of another employee -- Mikki Townes -- who states that she also attended the December 2017 human resources meeting and that everyone at the meeting, including her, was surprised when they were told they had signed the AAA (Declaration of Mikki Townes, dated March 26, 2018 (D.I. 37-2) ¶ 1). Townes goes on to state that she does not remember ever reading, seeing, or being notified of the AAA prior to the December 2017 meeting.

III. Analysis

A. Applicable Legal Principles

The Federal Arbitration Act, 9 U.S.C. §§ 1, et seq.; (the "FAA") provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable." See Nicosia v. Amazon.com, Inc., 834 F.3d 220,

4

228 (2d Cir. 2016), quoting 9 U.S.C. § 2.  Through the FAA, Congress has declared "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  If there is no genuine issue of fact concerning the making of the arbitration agreement or a party's failure to arbitrate and the dispute is within the scope of the arbitration agreement, Section 4 of the FAA requires courts to compel arbitration.  See 9 U.S.C. § 2; AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011).  Thus, the only issues to be resolved in the present motion are (1) whether the parties entered into a valid arbitration agreement and (2) whether the dispute is within the scope of that arbitration agreement.  Kutluca v. PQ New York Inc., 266 F. Supp. 3d 691, 699 (S.D.N.Y. 2017) (Broderick, D.J.), citing Granite Rock Co. v. Int'l Bhd. Of Teamsters, 561 U.S. 287, 299 (2010) and In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 128 (2d Cir. 2011).

Whether the parties entered into an arbitration agreement is controlled by state contract law.  First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.");

5

Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002). Under New York law, the party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 46 (2d Cir. 1993); Kutluca v. PQ New York Inc., supra, 266 F. Supp. 3d at 700-01. New York's courts have also held that a party's failure to read or understand an arbitration agreement does not relieve the party from the obligation to arbitrate. Kutluca v. PQ New York Inc., supra, 266 F. Supp. 3d at 701, citing Johnson v. Thruway Speedways, Inc., 63 A.D.2d 204, 205, 407 N.Y.S.2d 81, 83 (3rd Dep't 1978). "In the absence of fraud or other wrongful conduct on the part of another contracting party, a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them." Fleming v. J. Crew, 16 Civ. 2663 (GHW), 2016 WL 6208570 at *3 (S.D.N.Y. Oct. 21, 2016) (Woods, D.J.) (internal quotation marks and alterations omitted). Section 4 of the FAA provides that if there is an issue of fact with respect to the creation of an agreement for arbitration, then a trial is required.

B. Application of Legal Principles

1. Existence of an Arbitration Agreement

Defendants assert that the AAA is valid and binding on plaintiff; plaintiff contends there is no binding agreement to arbitrate under New York State law. Plaintiff argues that there was never a meeting of the minds because he does not remember seeing or signing the AAA, and that if he did sign the AAA, it was because Defendants told him to do so (Boves Decl. ¶ 6). Thus, plaintiff claims there is, at the very least, a triable issue of fact as to the existence of an agreement to arbitrate.

Plaintiff's argument is not persuasive. Plaintiff's electronic signature on the AAA constitutes consent to the AAA. Kutluca v. PQ New York Inc., supra, 266 F. Supp. 3d at 702. Moreover, plaintiff does not deny signing the AAA. To the contrary, all that plaintiff offers in opposition to the motion is his statement that he does "not remember any agreement into arbitration" (Boves Decl. ¶ 6). This statement is not sufficient to give rise to an issue of fact as to the formation of the AAA. "[F]ailing memories do not absolve a party from its contractual obligations or create a triable issue of fact." Kutluca v. PQ New York Inc., supra, 266 F. Supp. 3d at 701, citing Vardanyan v. Close-Up Int'l, Inc., 315 F. App'x 315, 317-18 (2d Cir. 2009) (summary order) and Stern v. Espeed, Inc., 06 Civ. 958 (PKC),

7

2006 WL 2741635 at *2 (S.D.N.Y. Sept. 22, 2006) (Castel, D.J.). Plaintiff's statement that he does not remember signing the AAA does not conflict with defendants' evidence to the contrary. Vardanyan v. Close-Up Int'l, Inc., supra, 315 F. App'x at 318.

Plaintiff argues in the alternative that defendants' have not proven the existence of an agreement to arbitrate by a preponderance of the evidence. Specifically, plaintiff claims that defendants' declarant, Epright, has no personal knowledge of plaintiff's agreeing to the terms of the AAA (Motion to Deny Petition for Arbitration and Waiver of Jury Demand or For Summary Jury Trial, dated Mar. 26, 2018 (D.I. 38) at 8-9). Federal Rule of Evidence 602 provides that "[e]vidence to prove personal knowledge may consist of the witness's own testimony." Thus, Epright's Declaration is sufficient by itself to establish Epright's personal knowledge of plaintiff's execution of the AAA because Epright states in it that he has personal knowledge of the facts set forth therein (Epright Decl. ¶ 2). In addition, plaintiff does not explain how he is in a position to know what Epright knows or does not know.

Thus, defendants have established the existence of a valid agreement to arbitrate.

2. <u>Scope of the Arbitration Agreement</u>

Section 4 of the AAA provides:

> As used in this Agreement, "Claims" means [sic] all disputes between you and the Company, including but not limited to disputes arising out of or related to your application for employment, your employment by the Company, or your separation from employment with the Company (including any job-related post-separation disputes) and includes any such disputes with current or former owners, members, officers, managers, supervisors, associates, or agents of the Company whether acting in their official or individual capacity. The term "Claims" includes, but is not limited to, any claim arising under federal, state or local law, under a statute such as Title VII of the Civil Rights Act of 1964 (Title VII), the Equal Pay Act [of] 1963 (EPA), the Fair Labor Standards Act (FLSA), the Family and Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), 42 U.S.C. § 1981, Title II of the Genetic Information Nondiscrimination Act of 2008 (GINA) and the Uniformed Services Employment and Reemployment Rights Act (USERRA), to name a few, under a rule, regulation or the common law, including, but not limited to any wage and hour claim of discrimination, harassment, retaliation, defamation, or wrongful discharge. The term "Claims" includes claims in equity; however, any party may seek interim equitable relief from a court of competent jurisdiction in order to maintain the status quo of any particular matter. This Agreement covers any Claims subject to arbitration which are brought on or after March 1, 2017, even if the alleged act or omission occurred prior to March 1, 2017. As used in this Agreement, "Claims" does not mean or include disputes related to workers' compensation claims, or health benefits, or proceedings under the Occupational Safety & Health Administration (OSHA) or the National Labor Relations Act (NLRA).

It is well settled that there is no exception to the FAA for discrimination claims. <u>Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.</u>, 191 F.3d 198, 204-06 (2d Cir. 1999) (finding Title

9

VII claims to be arbitrable); accord Casilla v. Philip & Jack
Hirth Mgmt., 563 F. App'x 85, 86 (2d Cir. 2014) (summary order);
Wang v. Precision Extrustion, Inc., 1:18-CV-350 (FJS/DJS), 2018
WL 3130589 at *3-*6 (N.D.N.Y. June 26, 2018); Washington v.
William Morris Endeavor Entm't, LLC, 10 Civ. 9647 (PKC)(JCF),
2011 WL 3251504 at *10 (S.D.N.Y. July 20, 2011) (Castel, D.J.).

Thus, there can be no issue that the claims asserted are within the scope of the arbitration agreement.

3. Summary Jury Trial

As a fallback, plaintiff seeks a summary jury trial under Section 4 of the FAA to resolve the issue of whether a valid arbitration agreement exists. This application must be denied because there is no genuine issue of fact to resolve in this regard.

Under Section 4 of the FAA, "[a] party resisting arbitration 'cannot obtain a jury trial merely by demanding one;' rather, he bears 'the burden of showing that he is entitled to a jury trial under § 4 of the [FAA].'" Doctor's Assocs. Inc. v. Stuart, 85 F.3d 975, 983 (2d Cir. 1996), quoting Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 961 F.2d 1148, 1154 (5th Cir. 1992). In order to be entitled to a jury trial, the party resisting arbitration must be able to "'unequivocal[ly] den[y] that the agreement [to arbitrate] had been made . . . ,

and some evidence should [be] produced to substantiate the denial.'" Doctor's Assocs. Inc. v. Stuart, supra, 85 F.3d at 984, quoting Almacenes Fernandez, S.A. v. Golodetz, 148 F.2d 625, 628 (2d Cir. 1945); see also Interocean Shipping Co. v. National Shipping & Trading Corp., 462 F.2d 673, 677 (2d Cir. 1972).

As noted above, plaintiff is unable to deny unequivocally the existence of an arbitration agreement. Rather, all he offers are his statements that he does not remember entering into the AAA and that, if he did sign the AAA, "[he] can only imagine [he] did so because [his] employer told [him] to" (Boves Decl. ¶ 6).

Even if I deem plaintiff's statement concerning his imagination to be an assertion that he signed the AAA because his employer directed him to do so, that fact would not render the AAA unenforceable nor would it create an issue of fact requiring a trial. "[T]he fact that there is inequality in bargaining power between an employer and a potential employee is not a sufficient reason to hold that arbitration agreements are not enforceable." Isaacs v. OCE Bus. Servs. Inc., 968 F. Supp. 2d 564, 570 (S.D.N.Y. 2013) (Koeltl, D.J.); see also Sablosky v. Edward S. Gordon Co., 73 N.Y.2d 133, 138, 535 N.E.2d 643, 647, 538 N.Y.S.2d 513, 517 (1989).[2]

---

[2]As noted above, plaintiff has also submitted a declaration from another employee -- Mikki Townes -- in whish she states she
(continued...)

4. <u>Plaintiff's Remaining Arguments</u>

Plaintiff's remaining arguments can be quickly dispatched.

Plaintiff first claims that the AAA is unenforceable because it is not supported by consideration. This argument fails. The AAA is supported by consideration because it mutually binds both Aaron's and its employees to submit claims to arbitration. <u>Hellenic Lines, Ltd. v. Louis Dreyfus Corp.</u>, 372 F.2d 753, 758 (2d Cir. 1967); <u>Marciano v. DCH Auto Group</u>, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) (Karas, D.J.).

Plaintiff's claim that the AAA was the product of fraudulent or negligent misrepresentations also fails. Plaintiff's fraud and negligent misrepresentation defenses are based on the fact that the subject line of the email transmitting the AAA to employees stated "MANDATORY ACTION REQUIRED." Plaintiff claims that this language led him to believe that he was required to sign the AAA when he was not. The language of the email itself has no such requirement; to the contrary, employees were expressly given the choice of opting out of the AAA. The email did require employees to take some action; they were required

---

[2](...continued)
has no recollection of reading or signing the AAA. Ms. Townes' recollection of her own actions is irrelevant to the question of whether plaintiff is bound by the AAA.

12

either to agree to the AAA or to opt out. In short, plaintiff's fraud and negligent misrepresentation arguments fail because there was no misrepresentation.

Finally, plaintiff claims that the AAA provision for confidential arbitration is unconscionable. A confidentiality provision does not, as a matter of law, render an arbitration agreement unconscionable. <u>Damato v. Time Warner Cable, Inc.</u>, 13-CV-994 (ARR)(RML), 2013 WL 3968765 at *12 (E.D.N.Y. July 31, 2013); <u>see</u> <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333, 344-45 (2011).

IV. <u>Conclusion</u>

Accordingly, for all the foregoing reasons, defendant's motion to compel arbitration is granted. The Clerk of the Court is respectfully directed to mark Docket Items 27, 36 and 40 closed. This matter is stayed pending the outcome of the parties' arbitration.

Dated: New York, New York
July 19, 2018

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel